IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CR505 |
| | ) | |
| v. | ) | |
| | ) | |
| TUT J. JANY, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |
| | ) | |

The defendant is before the court for sentencing pursuant to the United States Sentencing Guidelines ("the Guidelines"), which have been rendered advisory under the Supreme Court's recent decision in *United States v. Booker,* 125 S. Ct. 738 (2005).

I. BACKGROUND

Defendant was indicted and charged with providing false information in attempting to acquire a firearm in violation of 18 U.S.C. § 922(a)(6). Filing No. 1. The statutory range of imprisonment for that crime is not more than ten years. 18 U.S.C. § 924(a)(2). The defendant filed a petition to enter a plea of guilty to the charge on November 3, 2004. Filing No. 12. In his petition, he stated as the factual basis for his plea, "[o]n April 16, 04 I attempted to buy a rifle by making a false statement that I was not a convicted felon when in fact I had a prior felony conviction." Filing No. 17 at 14.

A presentence investigation report ("PSR") was prepared by the United States Probation Office ("Probation Office") and distributed to the parties. The PSR indicates Jany is a Sudanese immigrant residing legally in the United States with permanent residence status. He was convicted of felony reckless endangerment with a deadly weapon in Davidson County, Tennessee, in 2002. In the PSR, the Probation Office determined

Jany's base offense level under U.S.S.G. §2K2.1(a)(4)(A) which sets the offense level at 20 for a firearm offense committed after the defendant sustains one felony conviction for either a crime of violence or a drug trafficking offense. Defendant was entitled to a three-point reduction for acceptance of responsibility, resulting in a total offense category of 17. The Probation Office calculated defendant's criminal history category was II, assessing three criminal history points for conviction for driving under the influence driving on a revoked license and felony reckless endangerment. Accordingly, Jany's Guideline sentencing range was determined to be twenty-seven to thirty-three months.

The PSR also indicates that the defendant is a 31-year-old immigrant from Sudan. He entered this country on September 27, 1995, as a refugee. His father died in a bombing when the defendant was two years old. His mother died of typhus in a refugee camp two years later. He was raised by his uncle and brother who both physically abused him. He has all of four years of formal education. Jany speaks little, if any, English. He has worked in this country continuously since 2001. His last employment was with a local packing plant as a meat cutter earning $1,100 per month.

Mr. Jany has a significant criminal record which includes an assault at age 24 and a number of traffic offenses primarily related to his abuse of alcohol. His was convicted of felony reckless endangerment when he fired an AK-47 into the air in celebration of his twenty-eighth birthday in 2002. Presumably due to the lethal nature of the weapon he used and the 30 rounds he discharged, he was charged with felony reckless endangerment as opposed to a misdemeanor for unlawful discharge of a firearm. He entered a plea of guilty and was sentenced to one year in a workhouse, suspended, and one year probation.

On April 16, 2004, Mr. Jany attempted to purchase another assault type weapon from a local pawn shop. In the ATF Form 4473 application for the firearm, Jany falsely stated that he was not a convicted felon. He never obtained the firearm and was instead prosecuted under 18 U.S.C. §922(a)(6) for providing false information in attempting to obtain a firearm. When asked the reason he wanted to obtain the firearm he simply stated, "Everyone in Sudan has one." The government has adopted the PSR. Filing No. 18.

The defendant moves for downward departure (Filing No. 20). He relies on U.S.S.G. §§ 5K2.11 and 5K2.0 (a)(2)(B). He asserts that the Guidelines do not address the effect of deportation of refugees in nonimmigration cases. The defendant also asserts that his predicate offense is not typical of the types of violent crimes that require a six-level increase in his Guideline range. In his brief, the defendant argues that he is a deportable alien because of this felony firearm conviction and will only avoid deportation if he can show that he will be subject to torture if he returns to Sudan and is entitled to asylum. The defendant argues that the Guidelines do not address the effect of deportation of refugees in nonimmigration cases.

The defendant has introduced evidence establishing conditions in Sudan and showing the average time to disposition of a similar immigration case. It is undisputed that the defendant will likely remain incarcerated for twelve months in order to resolve his immigration status, followed by incarceration for an additional ninety days for review of that status. Thus, the defendant is likely to remain incarcerated for approximately fifteen months in addition to any sentence this court imposes.

II.    DISCUSSION

The United States Supreme Court recently decided *United States v. Booker,* 125 S. Ct. 2531 (2005). The Supreme Court found that its holdings in *Blakely v. Washington*,

3

542 U.S. ---,124 S. Ct. 2531 (June 24, 2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 477 (2000), apply to the United States Sentencing Guidelines. *Id.* at 756 (Stevens, J., opinion of the Court) (hereinafter "substantive majority opinion"). Thus, the Sixth Amendment is violated if a sentencing judge imposes a sentence under the United States Sentencing Guidelines based on the determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. *Id.* (reaffirming *Apprendi*). In a separate opinion, the Court addressed the issue of remedy by severing and excising the provision of the federal sentencing statute that makes the Guidelines mandatory, thus rendering the Guidelines effectively advisory and by providing appellate review for "reasonableness." *Id.* at 757, 765-66 (Breyer, J., opinion of the Court) ("remedial majority opinion"). As modified under *Booker*, the Sentencing Reform Act now requires a sentencing court to consider Guideline ranges as one of many factors for the court to consider. *See id. at 767*; 18 U.S.C. § 3553(a). Accordingly, this court is not bound by the Guidelines but must consult them and take them into account when sentencing. *Id.* at 767, 790 (Scalia, J., dissenting) (noting that "district courts have discretion to sentence anywhere within the ranges authorized by statute—much as they were generally able to do before the Guidelines came into being.").

The district court is charged under the Sentencing Reform Act with the duty to "impose a sentence sufficient, but not greater than necessary," to comply with sentencing purposes and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant" in so doing. *See* 18 U.S.C. § 3553(a)(1). The court must further consider "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further

4

crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a)(2). In addition, the court must consider, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the Guidelines, and its policy statements, as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3)-(6).

In imposing a sentence post-*Booker*, the sentencing court must first determine the appropriate Guidelines sentencing range, since that range remains an important factor to be considered in the imposition of a sentence. *United States v. Mashek*, –- F.3d —, —, 2005 WL 1083465 at *3 (8th Cir. May 10, 2005); *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir. 2005). Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Guidelines. *Haack*, 403 F.2d at 1002. Those considerations will result in a "Guidelines sentence." *Id.* The court then considers all other factors set forth in § 3553(a) to determine whether to impose the Guidelines sentence or a nonguidelines sentence. *Id.* Nothing in *Booker* requires the court to determine the appropriate Guidelines sentencing range in any manner other than the way the sentence would have been determined pre-*Booker*. *Id.*

The Probation Office recommended that defendant's Guidelines base offense level was twenty because defendant's felony conviction is a "crime of violence." U.S.S.G. § 2K2.1(a)(4). Defendant contends that the predicate offense in his case is atypical of the types of violent crimes that require this six-level increase in his Guideline range. The

5

Supreme Court recently held that a conviction for driving under the influence and causing serious bodily injury is not a "crime of violence" that would constitute an "aggravated felony" requiring deportation under immigration law. *Leocal v. Ashcroft*, 125 S. Ct. 377, 383 (2004). The issue of whether felony driving while intoxicated amounts to a crime of violence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) and U.S.S.G. § 4B1.1(a) has not been resolved in this circuit. *See United States v. Walker,* 393 F.3d 819, 848-49 (8th Cir. 2005) (finding Iowa felony offense of driving while intoxicated is not a crime of violence)*; United States v. McCall*, 397 F.3d 1028, 1030 (8th Cir. 2004), *vacated, rehr'g and reh'g en banc granted*, No. 04-1143 (8th Cir. Apr. 21, 2005). The statute criminalizing firearms offenses defines the term "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §§ 924(c)(3) & (e)(2)(B); *see also United States v. Shepard*, 125 U.S. 1254, 1258 (2005) (holding that any sentence under the Armed Career Criminal Act must "rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to [a violent felony]").

In view of the unsettled law in this area, the Probation Office may have incorrectly calculated the defendant's base offense level. The court need not address the issues of whether a *mens rea* requirement of recklessness or more is required for the increased base offense level or whether that defendant's predicate offense would satisfy that

6

standard because the court finds that a downward departure would be warranted in any event.

A district court can depart from the Guidelines when it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" that should result in a sentence different from that described. 18 U.S.C. § 3553(b). The Guidelines authorize departures when such factors exist in a particular case or when, "in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0, p.s. In the related context of illegal reentry after deportation, the seriousness of an underlying felony conviction has been held to be an encouraged basis for departure under the Guidelines. *United States v. Diaz-Diaz*, 135 F.3d 572, 579-80 (8th Cir. 1998). The seriousness of Jany's predicate offense is reflected in his prosecution for, and conviction of, felony reckless endangerment instead of misdemeanor unlawful discharge of a weapon. A six-level increase to account for the "violence" connected to that charge is not warranted under the circumstances.

Although ordinarily offender characteristics are not relevant to sentencing, they can be considered when present to an exceptional degree. See U.S.S.G. § 5K2.0(a)(4). Although consideration of a defendant's race, national origin, creed, religion and socio-economic status is discouraged under the Guidelines, the same cannot be said for refugee status. *See United States v. Big Crow*, 898 F.2d at 1331-32 (affirming departure based on efforts "to make decent life on difficult environment"). The court finds defendant's record of steady employment shows that he has overcome significant hardships in connection with his immigration to this country. *See United States v. Weise*, 89 F.3d 502, 506-07 (8th Cir.

7

1996). Moreover, although many people may have a limited education and may lack English skills, the circumstance of lack of education and training, *see id.,* present to an unusual degree in Jany's case. He is illiterate and cannot speak English. He is in this country due to circumstance beyond his control. Defendant's refugee status and his profound lack of literacy and education support a downward departure in this case.

Also, a downward departure under the Guidelines is warranted when the defendant's "conduct [does] not cause or threaten harm or evil sought to be prevented by the law proscribing the offense at issue." U.S.S.G. § 5K2.11. "The Sentencing Commission must have envisioned departures under § 5K2.11 when an illegal weapon is not possessed for an unlawful purpose." *United States v. White Buffalo*, 10 F.3d 575, 576-77 (8th Cir. 1993). The legislative history shows the "harm or evil" the firearms laws seek to prevent are violent crimes and loss of life. *Id.*; *see also United States v. Rojas,* 47 F.3d 1078, 1081 (11th Cir. 1995) (noting "[t]he statute as a whole, and particularly the decision to criminalize mere possession, reflected a legislative judgment that the likelihood of innocent possession of such an unregistered weapon was remote, and far less significant than the interest in depriving gangsters of their use"). Legislative history also shows that the firearms laws are directed at political violence. *Id.*

Mr. Jany asserts that he desired to purchase the rifle only as a status symbol. He did not need it for protection, nor was criminal behavior contemplated with the purchase or possession of the rifle. The evidence in connection with his prior conviction indicates that neighbors saw Mr. Jany firing a rifle in the air. Mr. Jany was shooting the rifle because it was his birthday as well as New Year's. Mr. Jany believed this was an appropriate way to celebrate two very important occasions. Although his conviction may technically fit the

Guideline definition of a "crime of violence," the court notes that Mr. Jany would have the same base offense level if the predicate crime were drug trafficking, rape, or homicide. The court finds that shooting a firearm in the air in celebration was not the "characteristic" the Commission had in mind when it set a base offense level of 20 for a crime of violence.

Because defendant's lack of education and illiteracy combined with his cultural milieu and because there is no evidence that he intended to use the weapon for illegal purposes, the court finds a downward departure is appropriate. Jany's statement to the FBI agent that he purchased the weapon simply because "everyone in Sudan has one" speaks for itself. Given the defendant's language barrier, his lack of formal education and the fact he did no jail time for his felony conviction, it is not unreasonable to assume he did not fully appreciate the seriousness of his prior offense. Although that does not excuse his illegal conduct in attempting to purchase a firearm, it does demonstrate that the defendant did not intend a harm equivalent to that contemplated by the Guidelines. Therefore, the court finds that a lesser harms departure of U.S.S.G. § 2.11 is applicable.

If defendant's prior conviction were a nonviolent felony, his base offense level would be fourteen. After the appropriate adjustment for acceptance of responsibility, defendant's base offense level would be twelve, which at Criminal History Category II would result in a sentencing range of the twelve to eighteen months. Coincidentally, this is the same amount of time he will spend awaiting determination of his immigration status.

In consideration of the other factors warranting a departure, the court finds a further departure is warranted. The court determines that a sentence of six months is appropriate in this case.

The court will next determine whether the sentence is reasonable under *Booker's* remedial scheme, 125 S. Ct. at 766-67 (remedial majority opinion), mindful that "[i]n fulfilling its duty to impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes," the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  *See* 18 U.S.C. § 3553(a)(1). The court has further considered the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a)(2).  In addition, the court has considered, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto.  18 U.S.C. § 3553(a)(2).  Also, the court has considered the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct and the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a)(6) & (7).  As noted above, the court has consulted the Guidelines and has determined that defendant's Guidelines sentence would be six months.

In consideration of the foregoing, and further considering the purposes of punishment and the need to deter such conduct, the court finds a sentence of six months is reasonable in this case.  The court notes that under the mandatory Guidelines system, the court would have granted defendant's motion for a downward departure for several

reasons. Although there is no doubt that Jany's prior offense was serious, the seriousness of the offense was already taken into account in the fact that he was charged with felony reckless endangerment rather than a misdemeanor. Jany's offense of shooting a weapon into the air to celebrate his birthday does not involve the same level of culpability as the crimes of violence that form the basis of the steep increase in sentence under the Guidelines.

Under section 3553(a)(1), the court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant." Defendant is 31 years old with a relatively clear record, except for alcohol-related incidents. The court finds that this sentence will adequately reflect the offense seriousness, promote respect for the law, provide just punishment and afford adequate deterrence. 18 U.S.C. § 3553(a)(1)(A) & (B). To the extent that this court is able to discern any sentencing disparity, the court finds that the sentence imposed herein will not materially impair the achievement of the sentencing goal of imposing similar punishments upon similarly situated defendants. Defendant is likely to be deported, but in the event he is not deported or returns to the United States, a supervised release term of three years will be imposed.

A judgment and order of commitment, together with a statement of reasons, in conformity with this Memorandum Opinion will issue this date.

DATED this 23rd day of May, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge

11